JOSEPH G. SLOAN, SHERIFF, v. REBECCA FIST.

FILED FEBRUARY 2, 1898.   No. 7763.

1. Evidence: WRITINGS. In order to render written instruments ad-
missible in evidence, their execution or genuineness, unless ad-
mitted, must be established by proof, except in cases within statu-
tory exceptions.

2. ———: ———: EXCEPTIONS: ASSIGNMENTS OF ERROR. An exception
taken or assignment in error against the admission in evi-
dence of a group of documents, offered together, is not waived
by confining the discussion in the briefs to a single document
comprised within the group, the objections urged being good
against all.

ERROR from the district court of Pawnee county. Tried below before BABCOCK, J.    *Reversed.*

*Story & Story* and *Griggs, Rinaker & Bibb*, for plaintiff in error.

*Francis Martin* and *Lindsay & Raper, contra.*

IRVINE, C.

.This action was replevin, by Rebecca Fist, claiming the chattels in controversy as vendee of Herman Fist, against ·the sheriff of Pawnee county, who had seized them under writs of attachment sued out against Herman Fist.    The plaintiff prevailed in the district court.

We·shall consider only one assignment of error, but in order to do so a brief outline of the facts is essential. Herman Fist was as early as 1889 engaged in the mercantile business at Pawnee City.    His brother, Emanuel Fist, the husband of the plaintiff, resided in Hastings. Emanuel was for a time engaged there in mercantile pursuits, but in 1887, as the result of a fire, he ceased to transact business on his own behalf, and entered the treasurer's office as an employé, Rebecca becoming the capitalist of the family.    The claim on the part of the plaintiff is that Herman, in 1889, began to appeal to his brother for financial assistance, which was afforded him out of plaintiff's means, and from time to time, until the debt reached the sum of $7,400.    Then an arrangement was made, in October, 1893, whereby Herman transferred to Rebecca, in discharge of the debt, a half interest in his stock and business.    The business was for some time thereafter conducted under the name of Herman Fist & Co., but Herman having largely overdrawn his account and having involved the firm in debt, Rebecca took the remaining half from him in satisfaction of her own claim and in consideration of her paying the partnership debts and another debt covered by a separate contract.    Both these transfers are assailed as fraudulent.    Their *bona*

*fides* was the issue on which the case really turned. A material inquiry was of course as to the advances made by Rebecca to Herman and the manner in which they had been made. Emanuel had conducted most of the business, and testified that the money was obtained by checks or drafts on banks in Hastings, some drawn by Rebecca herself, others by Herman directly on the banks, and paid out of the credits of Rebecca by her direction. After so testifying Emanuel was asked: "Have you checks showing the payment of these amounts?" He answered in the affirmative. He was then asked: "What are these papers here?" and answered, "These are checks." "Showing the payment of the amount you first named?" "Yes, sir." The checks, eleven in number, were then offered in evidence, with all the indorsements and canceling marks thereon, and without any further proof received, over defendant's objection that they were incompetent and that no foundation had been laid for their introduction. The indorsements were of a character to indicate that their proceeds had been obtained by Herman at Pawnee City, and that the checks had then passed through banks at St. Joseph, Omaha, and other points, finally reaching Hastings and being there paid. A portion of them appear to be checks drawn by Herman upon the Adams county bank, and would in nowise tend to show any advancement by Rebecca except for a pencil memorandum appearing thereon as follows: "Chg. R. Fist ac." These documents, if genuine, would, it will be seen, afford potent evidence to establish the transactions as Emanuel had narrated them, but such instruments do not prove themselves, and Emanuel's testimony that they were checks showing the payment was insufficient to prove the genuineness of a single signature or indorsement. There was no testimony whatever as to who made the memorandum "Chg. R. Fist ac.," when it was made, or why. Yet the materiality of the checks bearing that memorandum depended entirely upon its force. The checks were received without sufficient proof of their authenticity, and

the error was clearly prejudicial. The checks were
offered *en masse*, the same objection was interposed to all,
and in the petition in error a single assignment covers all
the checks. In the brief, however, complaint is made only
of admitting one of the Herman Fist checks, and that be-
cause of the failure to prove the memorandum referred
to. It is contended that the plaintiff in error has thus
abandoned the rest of his assignment, and thus admit-
ting that the other checks were properly admitted he is
in the position of having made his objection and assign-
ment of error too broad. The rule is that the court will
not consider assignments of error not discussed in the
briefs. They are treated as waived. By so waiving
them we do not think plaintiff in error estops himself
from taking advantage of exceptions taken at the trial
with special reference to the waived assignments, but
pertinent also to matters insisted upon. The failure to
discuss an assignment merely indicates that it is not
considered of sufficient importance, in view of the whole
record, to ask the court's attention to. The objection to
all the checks was good. The assignment in error di-
rected against all was well taken. That being so, plain-
tiff in error is not precluded from its benefit because in
his brief he selects for attack only a portion of the field
covered by that assignment.

Reversed and remanded.